UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANICHA C. JONES,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZAI, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:21-cv-0025-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability benefits under Titles II and XVI of the Social Security Act. ECF No. 1. The parties' cross-motions for summary judgment are pending. ECF Nos. 16, 18, 19. The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings in this action, including judgment, pursuant to 28 U.S.C. 636(c)(1). ECF No. 9. For the reasons provided below, the Commissioner's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.

**I.     Background**

In October 2013, plaintiff applied for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act), alleging that she became disabled on July 3, 2012 because of diabetes, leg problems, and degenerative joint

disease.[1]  ECF No. 11, Administrative Record ("AR") 61, 540, 549.  Plaintiff later amended her onset date to October 25, 2013.  AR 61, 1574.  Plaintiff's applications were denied initially and upon reconsideration.  AR 61, 555, 565-69.  After a hearing before administrative law judge ("ALJ") Michael Blume, at which plaintiff was represented by counsel, ALJ Blume published an unfavorable decision on August 18, 2016.  AR 61-75.

After the Appeals Council denied review, plaintiff filed a complaint for review of the final decision with the United States District Court.  AR 1-7, 1713-15.  On September 30, 2019, the court granted plaintiff's motion for summary judgment and remanded the matter for further proceedings.  AR 1758-65.  Specifically, the court determined that ALJ Blume failed to

/////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 42 U.S.C. §§ 423(d)(1)(A), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The steps are:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id*.

provide legally sufficient reasons for rejecting the opinion of plaintiff's treating physician, Dr. Kenneth Kim. AR 1762-65.

On remand, ALJ Cheryl Tompkin held a telephonic hearing in August 2020, at which plaintiff was represented by attorney Brian Shapiro. AR 1574, 1627-74. Also appearing were medical expert Frank L. Barnes and vocational expert Todd Gendreau. AR 1627-74.

At the hearing, ALJ Tompkin clarified that the issue before her was whether plaintiff was disabled before September 30, 2019, the date last insured. AR 1634. Plaintiff testified that, after her alleged onset date of October 2013, she worked part time as a bus driver in 2015 and 2016, but stopped because she could not feel her hands and feet. AR 1638-40. She also described back and neck problems and asserted that she could not sit for very long. AR 1641-42. Plaintiff described numbness and tingling in both arms and difficulty gripping, but stated that her symptoms improved after she had surgery on her neck. AR 1642-43. Plaintiff testified to stiffness in her neck such that she could only turn her head so far without pain. AR 1644. She testified that she had been seeing Dr. Kenneth Kim, her "pain management doctor," since 2014 or 2015, and that he had given her shots in her neck and shoulder. AR 1646. She testified that she had undergone carpal tunnel surgery and back surgery and that she still had back pain, which limited her to sitting for 15 minutes at a time and standing for ten minutes at a time. AT 1647-48.

Medical expert Dr. Barnes, certified in orthopedic surgery, testified that, based on his review of the medical record, plaintiff had severe lumbar disc herniation that met or equaled a listing as of April 2015. AR 1653-54, 1658. After back surgery in July 2017, plaintiff appeared to gain "full strength in her upper extremities and full sensation." AR 1653-54. Dr. Barnes opined that, three months after her second neck surgery in 2018, plaintiff's spinal impairments ceased to meet or equal a listing. AR 1654-55. In summary, Dr. Barnes testified, plaintiff's impairments met a listing through December 2018. AR 1657. After December 2018, he testified, she could stand for at least two hours a day, sit for eight hours a day, and occasionally reach overhead, among other functional limitations. AR 1656-58.

/////

/////

Dr. Barnes discussed two medical opinions in the record with which he disagreed:

> Q: And were there other medical opinions in the record that you found inconsistent with your determination?
>
> A: Yeah, there was some I couldn't understand. . . . It's found in Exhibit 17F[2] [from] June 2016. . . . I couldn't see in the record, it indicated that she would need . . . four unscheduled breaks a day. It didn't, I couldn't quite agree with that.
>
> Q: Okay. So basically your evaluation of the medical evidence there's nothing indicates [sic] that she would need breaks, unscheduled breaks, is what you're saying?
>
> A: That's yes, ma'am. I may have missed something but I couldn't, I didn't see it.
>
> Q: Okay, and any other conflict?
>
> Q: Let's see. Well I had the same disagreement with the October 14, 2019 residual functional capacity questionnaire[3] . . . with the business about the unscheduled breaks and being off four days a month. I didn't see where their opinion came from.
>
> Q: All right. There's nothing in the record that would substantiate that degree of missing work or need for breaks, is that accurate?
>
> A: Not that I could see, it may have come up in the doctor's conversations with the patient and he didn't write it down, but I really couldn't substantiate it.

AR 1659-60.

In her decision, the ALJ gave significant weight to Dr. Barnes' opinion, finding it consistent with the record as a whole. AT 1583. The ALJ determined that, between the alleged onset date and the date last insured, plaintiff had three separate phases, summarized as follows:

/////

/////

---

[2] AT 1564-68 (Physical Residual Functional Capacity [RFC] Questionnaire, dated 6/1/2016, from Dr. Kenneth Kim). Dr. Kim opined that plaintiff would need a 10-15 minute rest break every 45 minutes, and that she would be absent from work more than three days per month. AR 1566-68.

[3] AR 5046-48 (Physical RFC Assessment, dated 10/14/2019, from Dr. Vikram Talwar). Dr. Talwar opined that plaintiff would need 1-2 rest breaks of 5-10 minutes in an 8-hour workday, and that she would be absent from work about four days per month. AR 5047-48.

| Period | Meets Listing 1.04A | Disabled | RFC |
|---|---|---|---|
| October 25, 2013 – April 25, 2015 | No | No | Light, unskilled |
| April 26, 2015 – December 15, 2018 | Yes, due to severe lumbar disc disease and carpal tunnel syndrome | Yes | ___ |
| December 16, 2018 – September 30, 2019 | No, due to medical improvement | No | Sedentary, unskilled |

Specifically, the ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2019.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date.

3. Since the alleged onset date of disability, October 25, 2013, the clamant has had the following severe impairments: cervical disc herniation, obesity, and tendonitis of the bilateral shoulders.

4. Prior to April 26, 2015, the date the claimant became disabled, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that prior to April 26, 2015, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work, except she can frequently climb ramps and stairs, but never climb ladders, ropes or scaffolds. She can frequently balance, stoop, kneel, crouch or crawl. She can occasionally reach overhead bilaterally. She can frequently, but not continuously, flex, extend, and rotate her neck.

6. Since October 25, 2013, the claimant has been unable to perform any past relevant work.

7. Prior to the established disability onset date, the claimant was a younger individual age 18-49.

8. The claimant has at least a high school education.

9. Prior to April 26, 2015, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled' whether or not the claimant has transferable job skills.

/////

/////

10. Prior to April 26, 2015, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.[4]

11. In addition to the severe impairments discussed above, the claimant developed new severe impairments as of April 26, 2015: lumbar degenerative disc disease and carpal tunnel syndrome.

12. Beginning on April 26, 2015, the severity of the claimant's impairments met the criteria of section 1.04A of 20 CFR Part 404, Subpart P, Appendix 1.

13. The claimant was not disabled prior to April 26, 2015, but became disabled on that date and has continued to be disabled through December 15, 2018.

14. The claimant has not developed any new impairment or impairments since December 16, 2018, the date the claimant's disability ended. The claimant's current severe impairments are the same as those present from April 26, 2015 through December 15, 2018.

15. Beginning December 16, 2018, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.

16. Medical improvement occurred as of December 16, 2018, the day the claimant's disability ended.

17. The medical improvement that has occurred is related to the ability to work because the claimant no longer has an impairment or combination of impairments that meets or medically equal the severity of a listing.

18. After careful consideration of the entire record, the undersigned finds that, beginning December 16, 2018, the claimant has the residual functional capacity to perform sedentary work except she can lift/carry 10 pounds frequently. She can sit 8 hours, stand or walk 2 hours in an 8-hour workday. [In addition to various physical functional limitations, s]he can engage in repetitive activities, such as typing, with the left hand, for one hour, after which she would need to be able to perform an alternate non-repetitive work activity for 5 to 10 minutes. She would remain on task (i.e., continue to perform work related job duties) during this 5 to 10 minute period.

. . .

/////

/////

---

[4] Relying on vocational expert testimony, the ALJ found that, during this period, plaintiff could perform light, unskilled occupations such as cashier II, sales attendant, and office helper. AR 1582.

23. Beginning December 16, 2018, . . . there have been jobs that exist in significant numbers in the national economy that the claimant can perform.[5]

24. The claimant's disability ended December 16, 2018, and the claimant has not become disabled again since that date.

AR 1576-1589.

## II. Standard of Review

The court will uphold the Commissioner's decision that a claimant is not disabled if substantial evidence in the record supports the Commissioner's findings of fact and the Commissioner applied the proper legal standards. *Schneider v. Comm'r of the SSA*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

/////

/////

/////

---

[5] Relying on vocational expert testimony, the ALJ found that, during this period, plaintiff could perform sedentary unskilled occupations including charge account clerk, document comparer, and food and beverage order clerk. AR 1588.

### III.   Analysis

Plaintiff argues that the ALJ erred by rejecting the opinions of treating physician Dr. Kim. In her decision, the ALJ considered three opinions by Dr. Kim and assigned them various weights during the time periods outlined above. Plaintiff asserts that "[a]ll articulations by the ALJ in reference to Dr. Kim's opinions failed to meet the legal standard required." ECF No. 16 at 11.

In June 2016, Dr. Kim filled out a Physical RFC Questionnaire in which he noted that he had treated plaintiff since 2013. AT 1564. He noted that she suffered from severe neck and shoulder pain and decreased range of motion, and could lift less than 10 pounds occasionally. AR 1564, 1577. As to clinical findings and objective signs, Dr. Kim noted: "Impingement examination findings. MRI shoulder. MRI cervical spine." AR 1564. Dr. Kim opined that plaintiff was not a malingerer and that her symptoms were expected to last at least 12 months. AR 1565. He opined that plaintiff could sit and stand/walk less than two hours, would need a 10-15 minute rest break every 45 minutes, and that she would be absent from work more than three days per month, among other limitations. AR 1566-68.

In November 2016, Dr. Kim completed a second Physical RFC Assessment in which he noted that plaintiff suffered from back, neck, and shoulder pain, and arm and leg weakness. AR 2093. As to clinical findings and objective signs, Dr. Kim noted: "MRI of cervical and lumbar spine. Limited range of motion of neck and low back."[6] AR 2093. He opined that plaintiff could stand, sit, and walk for less than two hours and would need to take 3-4 unscheduled breaks, each lasting 15-20 minutes, during an 8-hour workday. AR 2094. Dr. Kim's assessment of functional limitations was largely the same as in his June 2016 report. He opined that plaintiff would miss work more than four days per month. AR 2095. Notably, both of Dr. Kim's 2016 opinions were issued in a period during which the ALJ found plaintiff to be disabled.

Dr. Kim completed his third RFC questionnaire on October 17, 2019. AR 5502-04. Dr. Kim assessed limitations similar to those in his 2016 opinions. As to clinical findings and objective signs, he noted "MRI findings" and examination findings of motor and sensory changes

---

[6] An additional handwritten comment is illegible.

and decreased range of motion. AR 5502. He opined that plaintiff would need one or two 10-minute breaks during an 8-hour workday and would be absent from work about four days per month. AR 5503-04. This third opinion was issued after the date last insured.

For applications filed before March 27, 2017, the weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. *Lester*, 81 F.3d at 831.

Here, the analysis of the ALJ's consideration of Dr. Kim's testimony covers three relevant time frames.

**A. Period One (October 2013 – April 2015)**

As noted above, the ALJ found plaintiff not disabled during this time. She gave "little weight to the opinions of Dr. Kim during this period." AR 1580. The ALJ reasoned:

> Dr. Kim limits the claimant to sitting and standing for less than two hours total, lifting only ten pounds, never performing most postural maneuvers, and missing more than four days per month.[7] Dr. Kim has a treatment relationship with the claimant. However, his opinions were provided on checkbox forms with minimal accompanying explanation. Further, the standing limitations are inconsistent with the claimant's normal gait and lack of an assistive device during this period.[8] Further, the capacity to lift no more than ten pounds is inconsistent with her full strength on the right side and only slightly reduced strength with the upper left extremity.[9] Therefore, these opinions are given little weight during this period.

AR 1580.

The ALJ also discounted the opinions of the State agency physicians during this period, noting that they "neither treated nor examined the claimant." AR 1580. She gave moderate weight to the opinion of consultative examiner Dr. Mark Shelub, who opined that plaintiff could lift up to 15 pounds, but was limited in working above shoulder level with the left extremity. AR 1580, citing AR 2096-2119. The ALJ found this opinion "reasonably supported by a view of multiple medical records" and consistent with imaging studies of the left shoulder and cervical spine. AR 1580.

Plaintiff asserts that the treatment notes cited by the ALJ do not adequately reflect the record as a whole, and that the ALJ did not sufficiently credit Dr. Kim as a pain specialist who assessed limitations based on pain. However, it is unclear which records or findings support Dr. Kim's opinions that plaintiff could sit, stand, and walk for less than two hours in an 8-hour workday, could only lift 10 pounds, needed multiple unscheduled breaks per day, and would be absent from work three or four days per month. Notably, medical expert Dr. Barnes found nothing in the record to warrant multiple breaks per day and frequent absences. AR 1659-60.

Insofar as these alleged limitations based on plaintiff's subjective complaints of pain, the ALJ found plaintiff less than fully credible as to the intensity, persistence, and limiting effects of

---

[7] Citations omitted; *see supra*.

[8] Citing AR 1046 (September 2013 note of exam findings including normal gait). In her credibility analysis, the ALJ also noted plaintiff's normal gait and lack of an assistive device, citing February 2015 exam findings. AR 1580, 1094.

[9] Citing AT 966 (April 2014 note of exam findings including 5/5 shoulder abduction on right and 4/5 on left, normal gait, and ambulation without a device).

her symptoms prior to April 26, 2015, in an unchallenged finding. AR 1580. *See* 42 U.S.C. § 423(d)(5)(A) ("[a]n individual statement as to pain or other symptoms shall not alone be conclusive evidence of disability"). The ALJ reviewed the MRI results cited by Dr. Kim in support of his answers on the checkbox forms, but found them to be mild:

> While the claimant did have imaging of her shoulder and cervical spine, this was not performed until October 2014, about one year after the alleged onset of disability. While the shoulder MRI showed rotator cuff tendinosis, there was not tearing and only mild AC joint osteoarthritis. Additionally, the imaging of the cervical spine showed only mild stenosis, small osteophytes, and minimal disc bulging.

AR 1580, citing AR 1070-70 (imaging results). The ALJ fulfilled her duty of reviewing the record as a whole, as evidenced by her detailed summary of the medical evidence. AR 1577-88. Plaintiff has not shown that the ALJ erred by discounting Dr. Kim's opinions during this period due to his conclusory, minimally supported findings, a contradictory opinion by an examining physician, and contradictory evidence in the record.

## B. Period Two (April 2015 – December 2018)

During this period, the ALJ found plaintiff to be disabled due to the development of severe new impairments: lumbar degenerative disc disease and carpal tunnel syndrome. AR 1582. She gave moderate weight to the opinions of Dr. Kim during this period, reasoning:

> As discussed above, [Dr. Kim's] opinions limit the claimant to a reduced range of sedentary work with significant postural limitations and absences from work. Dr. Kim has a long term treatment relationship with the claimant. This opinion is also reasonably consistent with the claimant's use of a cane and decreased lower extremity strength during this period. While Dr. Kim's opinion also supports a finding of disability, more weight was given to Dr. Barnes' opinion since Dr. Kim's opinion does not specifically address the listings.

AR 1583. As noted above, two of Dr. Kim's three opinions were issued during this three-year period in which the ALJ determined plaintiff to be disabled.

The ALJ gave significant weight to the opinion of testifying medical expert Dr. Barnes during this period. AR 1583. But as to Dr. Kim, the ALJ found plaintiff to be disabled during this period and therefore any error as to the weighing of Dr. Kim's opinion as to this period is harmless error.

**C.  Period Three (December 2018 – September 2019)**

The ALJ found plaintiff not disabled during this period due to medical improvement.

With regard to this period of less than one year, she gave "some" weight to the opinions of Dr. Kim, reasoning:

> As noted above, he limits the claimant to a reduced range of sedentary work with postural limitations and multiple absences from work per month.  The capacity for sedentary work with postural restrictions is consistent with the other opinions during this period, including the opinion of Dr. Barnes.  However, less weight is given to the remainder of this opinion.  While he has a treatment relationship with the claimant, his opinions are rendered on checkbox forms with minimal supporting explanation.  Further, the level of absences in this opinion are not consistent with the lack of surgical procedures for the claimant's shoulders or carpal tunnel syndrome, as well as the lack of additional spinal surgeries after September 2018.  Therefore, this opinion is given only some weight.

AR 1586-87.

The ALJ assessed multiple medical opinions with respect to this period, in addition to the opinions of Dr. Barnes and Dr. Kim.  These included two initial State agency determinations, two State agency determinations on reconsideration, a Physical RFC assessment by Dr. Vikram Talwar, and an evaluation by Dr. John Anigbogu, as well as a third-party function report by plaintiff's aunt.  AR 1587.  As above, the ALJ fulfilled her duty to consider the entire record.

The ALJ gave significant weight to the opinion of Dr. Barnes, who reviewed "almost the entire medical record" and "supported his opinion with references to the available evidence, including plaintiff's surgical procedure.  This opinion is also consistent with the claimant's hearing testimony, which acknowledges improvement after her last surgery."  AR 1586.  The Ninth Circuit has held that an ALJ may credit the testifying medical expert's opinion over the treating physician's opinion where specific and legitimate reasons are provided.  *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999) ("[W]e have consistently upheld the Commissioner's rejection of the opinion of a treating or examining physician, based in part on the testimony of a nontreating, nonexamining medical advisor"), citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989).  In light of the referenced testimony by Dr. Barnes and the plaintiff the ALJ did not err in this regard.

Nor did the ALJ err in discounting some of Dr. Kim's checkbox opinions as conclusory and inconsistent with the record, as discussed above. Plaintiff has not shown harmful error, and defendant is entitled to summary judgment.

### IV. Order

For the foregoing reasons, plaintiff's motion for summary judgment (ECF No. 16) is DENIED, defendant's cross-motion for summary judgment (ECF No. 18) is GRANTED, and the Clerk is directed to enter judgment in defendant's favor and close the case.

Dated: April 29, 2022.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE